<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
October 14, 2008

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **DAVID GENE MARKLE,** | ) | **Case No. 08-10109-R** |
| | ) | **Chapter 7** |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| **PATRICK J. MALLOY III,** | ) | |
| **TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adv. No. 08-01019-R** |
| | ) | |
| **MID-CONTINENT CASUALTY COMPANY,** | ) | |
| **OKLAHOMA SURETY COMPANY,** | ) | |
| **AND PARKING BUILDERS, L.L.C.,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Before the Court is the Plaintiff's Motion for Partial Summary Judgment and Brief in

Support Thereof (Adv. Doc. 23) ("Trustee's Motion") filed on June 13, 2008, by Plaintiff

Patrick J. Malloy III, Trustee for the Bankruptcy Estate of David Gene Markle (the

"Trustee"); Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Adv.

Doc. 34) ("Response"), filed on July 10, 2008, by Defendant Mid-Continent Casualty

Company ("Mid-Con"); and Plaintiff's Brief in Reply to Mid-Continent Casualty Company's

Response to Plaintiff's Motion for Partial Summary Judgment (Adv. Doc. 38) ("Reply"), filed on July 28, 2008, by the Trustee.

## I.      Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (B), (F), and (K) and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.      Summary of the Parties' Contentions

On March 27, 2008, the Trustee filed the First Amended Complaint (Adv. Doc. 5) (the "Complaint") seeking declaratory judgment to determine the validity of Mid-Con's purported liens on two parcels of real property.[1] The crux of the parties' dispute involves interpretation of a document titled "General Application and Agreement of Indemnity - Contractors Form" dated July 18, 2005, that was signed by David G. Markle (the "Debtor") and his wife, Robin T. Markle ("Ms. Markle") (collectively, "the Markles"), on September 20, 2005.  The Trustee attached a copy of this document (the "Agreement") to his Complaint and to the Trustee's Motion.  Mid-Con contends that the Agreement created liens in its favor on two parcels of real property that were owned by the Markles at the time they signed the Agreement.  In the Complaint, the Trustee contends for a variety of reasons that the Agreement did not create liens in Mid-Con's favor on either parcel of real property.

---

[1] The Trustee also included a "Claim for Marshalling" in the Complaint.  That claim is not addressed in the Trustee's Motion.

In the Trustee's Motion, the Trustee argues that summary judgment is appropriate because the undisputed facts establish that there are a number of defects in the Agreement and in Mid-Con's actions in attempting to create and perfect its liens on the two properties at issue.

First, the Trustee contends that because the Agreement did not contain the addresses and property descriptions of any real property when the Markles executed the Agreement, no liens were granted by the Markles on any of their properties at the time they executed the Agreement. Second, the Trustee contends that the clause in the Agreement that authorizes Mid-Con, as attorney-in-fact, to amend the Agreement to add descriptions for properties subject to liens in its favor is overbroad and thus ineffective.  Third, the Trustee contends that even if the Agreement authorized Mid-Con to add property descriptions and record the Agreement as a lien at some point after execution, at the time Mid-Con did so in August of 2006, the Markles no longer held title to the properties at issue, and any attempt to establish liens thereon was ineffective.   Finally, the Trustee contends that any subsequent reconveyances of the properties back to the Debtor, which might have allowed the liens to attach to "after-acquired" property, occurred within ninety days of the Debtor's bankruptcy petition, and therefore such liens are avoidable as preferential transfers pursuant to Section 547 of the Bankruptcy Code.

In its Response, Mid-Con contends that notwithstanding the lack of property descriptions in the Agreement at the time the Markles executed the Ageement in September 2005, liens were created on both parcels of real property at that time.  In the alternative, Mid-

3

Con contends that the grant of authority allowing Mid-Con to act as the Markles' attorney-in-fact was valid and that Mid-Con exercised that authority by supplementing the Agreement with property descriptions and recording the Agreement on August 29, 2006.  Mid-Con also contends that because the transfers of real property by the Markles after they executed the Agreement but before the Agreement was recorded in August 2006 were fraudulent and thus void, liens in its favor were created on August 29, 2006.  Since August 29, 2006, is more than ninety days prior to the date of the Debtor's bankruptcy, Mid-Con argues that the liens are not avoidable by the Trustee pursuant to Section 547 of the Bankruptcy Code.  Finally, Mid-Con contends that the Tulsa County District Court has determined that Mid-Con's lien on one of the tracts is valid and that the Judgment to that effect is binding on this Court.

## III.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056.  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001), citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler, 144 F.3d at 670, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  When the movant has the burden of proof, "the movant must establish every element of its claim . . . by sufficient, competent evidence to set forth a prima facie case."  In re Ribozyme Pharmaceuticals, Inc. Securities Litigation, 209 F. Supp. 2d 1106, 1111 (D.Colo. 2002) (footnote omitted).

Once the movant has met its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Spaulding, 279 F.3d at 904, *citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Liberty Lobby, 477 U.S. at 248.  The non-moving party may not simply rest upon its pleadings to satisfy its burden.  See Liberty Lobby, 477 U.S. at 256.  Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant."  Mitchell v. City of Moore, 218 F.3d 1190, 1197 (10th Cir. 2000), *quoting* Adler, 144 F.3d at 671.  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."  Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (quotations and citation omitted).

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  Reasonable inferences that may be made

from the proffered evidentiary record should be drawn in favor of the non-moving party. <u>See</u> <u>Adams</u>, 233 F.3d at 1246. However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." <u>Liberty</u> <u>Lobby</u>, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587. Conversely, even where a movant's facts are undisputed, if two reasonable factfinders could reach different conclusions or "ultimate inferences" from the undisputed facts, summary judgment is not warranted. <u>See</u> <u>Luckett v.</u> <u>Bethlehem Steel Corp.</u>, 618 F.2d 1373, 1382 (10th Cir. 1980).

## IV.    Record on Summary Judgment

Rule 56(c) provides that summary judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56(c). In addition, a court may consider in ruling on a summary judgment motion any materials which would be admissible at trial. <u>See</u> <u>Cinocca v. Baxter Laboratories, Inc.</u>, 400 F. Supp. 527, 529 (E.D. Okla. 1975)(citation omitted). "As a general rule, documents which are submitted in support of a Motion for Summary Judgment must be authenticated by an affidavit. However, uncertified documents may be considered by the Court if not challenged." <u>Id</u>. at 530 (citation omitted). Neither party has objected to or challenged the admissibility of the other party's exhibits. Accordingly, the Court finds that the exhibits

submitted with both parties' pleadings, as well as the undisputed facts stated in the Complaint and the Answer, should be considered.

The following material facts are uncontested and are supported by the record:

1.       Debtor owned 51% of Parking Builders, L.L.C. ("PB"), a company in the business of constructing parking garages.  See Trustee's Motion at 2-3, ¶¶ 1-2, and Exh. C; Response at 1-2, ¶¶ 1-2.

2.       PB's business of constructing parking garages requires that it be bonded.  In order for PB to obtain bonds, the Markles executed the "General Application and Agreement of Indemnity - Contractors Form" (defined above as the "Agreement") with Mid-Con and Oklahoma Surety Company.[2]   In the Agreement, the Markles (and others) agreed to indemnify Mid-Con against any losses or payments on PB's bonds.  The Agreement was dated July 18, 2005, and executed by the Markles on September 20, 2005.  See Trustee's Motion at 2-3, ¶ 2, and  Exh. D; Response at 2-3, ¶ 2.

3.       The Agreement contains the following clauses:

6.       Attorney-In-Fact
Each of the Undersigned hereby irrevocably nominates, constitutes, appoints and designates [Mid-Con] or any person or persons designated by [Mid-Con] as his attorney-in-fact with the right to exercise all of his rights assigned, transferred, pledged, and set over to [Mid-Con] by this Agreement, and in his

---

[2]  Neither Oklahoma Surety Company nor PB filed Answers or otherwise responded to the Trustee's Complaint in this adversary proceeding.  Oklahoma Surety has also filed a disclaimer of any interest in one of the subject properties in the main bankruptcy case.  See Main Case Doc. 98.  The Trustee's Motion expressly limits the relief it seeks to Mid-Con's interests in the subject properties.  See Trustee's Motion at 1.

name to execute and deliver any and all additional or other assignments, instruments or documents deemed necessary or desirable by [Mid-Con] (i) to vest in [Mid-Con] absolute title to any and all monies, property and rights hereby assigned, and (ii) to provide the protection and rights to [Mid-Con] contemplated by all of the provisions of this Agreement.

\* \* \*

14.     Real Estate Lien and Waiver of Homestead Right

The Undersigned waive(s), so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property (real or personal), including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.  Each of the Undersigned appoints any officer of [Mid-Con] as attorney-in-fact with full authority to fill in the legal description of any real property in which they have an interest at any time; this authority to continue until [Mid-Con]'s liability under any such Bond or Bonds shall have wholly terminated.  Upon the occurrence of an event of default as described in paragraph 5 above, this instrument shall be filed as a Lien against any real property described below to the same extent as if the property had been conveyed and transferred under the laws of any state, territory or possession.

See Trustee's Motion at 2-3, ¶ 2, and Exh. D; Response at 2-3, ¶ 2.

4.     At the time the Markles executed the Agreement on September 20, 2005, the space designated in paragraph 14 of the Agreement for property addresses and legal descriptions was blank.  See Trustee's Motion at 3, ¶ 3; the Answer of Mid-Continent Casualty Company (Doc. 17) ("Answer") at 2,  ¶ 5.

5.     At the time the Markles executed the Agreement, the Markles jointly owned two pieces of real property.   The addresses of these properties are 10428 South 121st Street East, Bixby, Oklahoma 74008 (the "Farm") and 3713 South Orange Circle, Broken Arrow, Oklahoma 74011 (the "Home").  See Trustee's Motion at 3, ¶ 4; Response at 3,¶ 4, Exh. 2, and Exh. 18.

6.     The Agreement does not contain any provision that restricts the Markles from transferring or disposing of any real property that they owned at the time the Agreement was executed.  <u>See</u> Trustee's Motion at 3-4, ¶ 5 and Exh. D; Response at 3-4, ¶ 5.

7.     On January 20, 2006, the David G. Markle Revocable Trust u/d/t 01/20/2006 ("Trust") was created under the laws of the State of Oklahoma.  The trust document and attachments name the Debtor as the primary beneficiary with additional contingent and/or remainder beneficiaries.  <u>See</u> Response at 3-4, ¶ 5 and Exh. 4; Reply at 3-4, ¶ 5 and Exh. F.

8.     On January 24, 2006, Markle Holdings L.L.C., a limited liability company organized under the laws of the State of Oklahoma, was created.  <u>See</u> Response, Exh. 13; Reply at 4, ¶ 6 n. 1, and Exh. B and C.

9.     The Debtor was copied on a letter dated February 16, 2006, from PCL Construction Services, Inc. ("PCL") to PB.  By virtue of that letter, the Debtor was notified of PCL's alleged problems with PB's services as a subcontractor on a construction project in Florida.   Subsequent letters from PCL dated March 16, 2006, and March 17, 2006, also detailed deficiencies with PB's

services, which deficiencies are disputed by PB.[3]  <u>See</u> Response at 3-4, ¶ 5,

Exh. 5, 6, and 7; Reply at 3-4, ¶ 5.

10.     On March 28, 2006, a general warranty deed transferring the Markles' interest

in the Farm to Markle Holdings L.L.C. was recorded.  <u>See</u> Trustee's Motion

at 3-4, ¶ 5 and Exh. E; Response at 3-4, ¶ 5.

11.     On March 28, 2006, a general warranty deed transferring an undivided one-

half of the Markles' joint interest in the Home to the Trust was recorded.  <u>See</u>

Trustee's Motion at 3-4, ¶ 5 and Exh. F; Response at 3-4, ¶ 5.

12.     On or about August 29, 2006, an agent of Mid-Con inserted street addresses

purporting to identify the Farm and the Home in the blank space in paragraph

14 of the Agreement and attached legal descriptions of the Farm and the Home

to the Agreement.  The Agreement, with these modifications, was recorded

with the Tulsa County Clerk on August 29, 2006.  <u>See</u> Trustee's Motion at 4,

¶ 6; Response at 4-5, ¶ 6.

13.     On December 18, 2007,  Mid-Con recorded a Notice of Lis Pendens in the

Tulsa County real estate records indicating that Mid-Con had commenced

proceedings to foreclose a lien on the Home.  The Notice of Lis Pendens

---

[3] Paragraph 5 of the Agreement lists six possible categories of "events in default," including: "[a]ny abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, any contract covered by a Bond or any Bond liability;" and "[t]he failure, delay, refusal or inability of [PB] to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond." Agreement, ¶ 5.

names both the Markles and the Trust as third-party defendants.   <u>See</u> Response at 5, ¶ 11, and Exh. 11.

14.     On January 17, 2008, a quit claim deed reconveying the Trust's interest in the Home back to the Debtor was recorded.  <u>See</u> Trustee's Motion at 4, ¶ 7, and Exh. G.

15.     On January 21, 2008, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

16.     On February 5, 2008, the Markles, the Trust, Markle Development Interests, L.L.C., Tulsa Development Acres, L.L.C., Markle Development Investments, L.L.C., Horse Farm, L.L.C., and Markle Holdings, L.L.C., conveyed their interests, if any, in the Farm to the Trustee.  The quit claim deed evidencing this conveyance was recorded on February 11, 2008.   <u>See</u> Trustee's Motion at 4, ¶ 10;  Response at 5, ¶ 10, and  Exh. 1.

17.     On February 29, 2008, Markle Development Interests, L.L.C. and Horse Farm, L.L.C., executed another quit claim deed conveying their interests, if any, in the Farm to the Trustee.  That deed was recorded on March 3, 2008.   <u>See</u> Reply at 4, ¶ 8, and Exh. E.

18.     On March 17, 2008, the Debtor conveyed his interest in the Home to the Trustee by quit claim deed.[4]  That deed was recorded on May 6, 2008.  <u>See</u>

---

[4] Although the actual date of the quit claim deed is March 17, 2006, this appears to be a typographical error.  In the deed, the property is transferred to the Trustee of a

(continued...)

11

Trustee's Motion at 4, ¶ 11; Response at 5, ¶ 11; Reply at 4-5, ¶ 9, and Exh. D.

## V.    Conclusions of law

### A.    <u>The Agreement</u>

The operative document for determining the rights of the parties in this proceeding is the Agreement.  The Agreement describes the rights and obligations of each party and establishes when and how liens in Mid-Con's favor may be created.

Paragraph 6 of the Agreement, titled "Attorney-In-Fact," authorizes Mid-Con (or its appointed agent) to act "as [the Markles'] attorney-in-fact with the right to exercise all of [the Markles'] rights assigned, transferred, pledged, and set over to [Mid-Con] by this Agreement, and <u>in [the Markles'] name</u> to execute and deliver any and all additional or other assignments, instruments or documents deemed necessary or desirable by  [Mid-Con] . . . ." Agreement at ¶ 6 (emphasis added).  This grant of authority does not authorize Mid-Con to act on behalf of the Debtor in his capacity as Trustee of the Trust, or as the sole member or manager of a limited liability company.

Paragraph 14 of the Agreement, titled "Real Estate Lien and Waiver of Homestead Right," states that "[<u>u</u>]pon the occurrence of an event of default as described in paragraph 5 above, this instrument <u>shall be filed as a Lien</u> against <u>any real property described below</u> to

---

[4](...continued)
bankruptcy estate that did not exist until January 21, 200<u>8</u>, the notary date is May 2, 200<u>8</u>, and the deed was recorded on May 6, 200<u>8</u>.  Additionally, no party has argued that this quit claim deed was actually executed in 2006.

the same extent as if the property had been conveyed and transferred under the laws of any state, territory or possession." Agreement at ¶ 14 (emphasis added). This is the only provision in the Agreement concerning liens. Thus, by its own terms, the Agreement requires that an event of default must occur before Mid-Con is authorized to record a lien against any of the Markles' property. The Debtor was copied on three letters indicating that there were problems with one of PB's projects. For purposes of this Motion, construing the facts and inferences in favor of the non-movant Mid-Con, the Court will assume that the conditions described in the letters constituted an "event in default" under paragraph 5 of the Agreement.

In order for a lien created by the Agreement to attach to any real property, the Agreement must also describe the property to be encumbered by the lien. It is undisputed that at the time the Markles executed the Agreement, no real property was described in paragraph 14 of the Agreement. While Mid-Con may have been authorized to supplement the Agreement with the real property addresses and legal descriptions of the Farm and the Home and to record the Agreement with the Tulsa County Clerk as early as February 16, 2006, it is undisputed that Mid-Con waited until August 29, 2006 to do so. To determine the legal effect of the Agreement, the Court must consider the status of the title to the Farm and the Home on August 29, 2006, and thereafter.

1.    The Farm

The Markles purchased the Farm sometime in 1997.  It is undisputed that at the time

the Markles executed the Agreement in September of 2005, they held legal title to the Farm.

On January 27, 2006, however, the Markles transferred all of their interest in the Farm to

Markle Holdings, L.L.C. by warranty deed.  After that date, they no longer held legal title

to the property.  See 16 O.S. §19.[5]  When the transfer was recorded on March 28, 2006, Mid-

Con had constructive notice that the Markles no longer held title to the Farm.  See 16 O.S.

§16.[6]

The Agreement authorized the attorney-in-fact to "fill in the legal description of any

real property in which [the Markles] have an interest at any time."  Agreement at ¶ 14

(emphasis added).  On August 29, 2006, when the attorney-in-fact, acting on behalf of Mid-

Con, inserted the address of the Farm in paragraph 14 of the Agreement, attached a legal

description of the Farm to the Agreement, and then recorded the Agreement, neither of the

---

[5] "A warranty deed made in substantial compliance with the provisions of this chapter, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor, that at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all encumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same, and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives as if written at length in such deed." 16 O.S. §19 (emphasis added).

[6] "Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors." 16 O.S. §16 (emphasis added).

Markles owned an interest in the Farm.   By recording the Agreement as a lien against property not owned by the Markles, Mid-Con exceeded its  authority under the Agreement. Moreover, a mortgagor cannot give a valid mortgage in property in which it has no interest. See Ladder Energy Co. v. Intrust Bank, N.A., 1996 OK CIV APP 126, 931 P.2d 83, 85, citing Linton v. Citizens State Bank, 1961 OK 114, 361 P.2d. 1071, 1074 ("[The bank] was subject to the elementary rules that a mortgagor cannot give a mortgage on property which he does not own, and that it is the duty of the mortgagee to see that the mortgagor has good title to the property which he undertakes to mortgage.") Therefore, unless the Markles' conveyance of the Farm to Markle Holdings, L.L.C. was void, the Farm was not encumbered by any lien in favor of Mid-Con.

On February 11, 2008, the Debtor, acting on behalf of Markle Holdings, L.L.C., and other subsequent grantees, transferred the Farm to the Trustee, and the Farm became property of the Debtor's bankruptcy estate. No lien in favor of Mid-Con could have attached to the Farm after the Debtor filed his bankruptcy petition because Section 362(a)(4) of the Bankruptcy Code prohibits "any act to create, perfect, or enforce any lien against property of the estate."  See also Section 552(a) of the Bankruptcy Code ("property acquired by the estate . . . is not subject to any lien resulting from a security agreement entered into by the debtor before commencement of the case.")

### 2.   The Home

The Markles purchased the Home in 1993.  It is undisputed that at the time the Markles executed the Agreement in September of 2005, they held legal title to the Home.

On March 17, 2006, the Markles  transferred one-half of their joint interest in the Home to the Trust by warranty deed.  When the deed was recorded on March 28, 2006, Mid-Con had constructive notice of the transfer of an undivided one-half of the property to the Trust and the fact that the Markles only retained an undivided one-half interest in the Home.  See 16 O.S. §16.

a.    *The Undivided One-Half Interest Retained by the Markles*

Even assuming that an event of default as defined in paragraph 5 of the Agreement occurred on or about February 16, 2006, it is undisputed that Mid-Con waited until August 29, 2006 to complete the property descriptions in the Agreement and record the Agreement. Prior to the time that Mid-Con supplemented the Agreement by adding property descriptions, no lien could attach to any real property.  On August 29, 2006, when the attorney-in-fact, acting on behalf of Mid-Con, completed the blank address lines, attached a property description of the Home to the Agreement, and recorded the Agreement,  the Markles only owned an undivided one-half interest in the Home.  Pursuant to terms of the Agreement, the attorney-in-fact is authorized to "fill in the legal description of any <u>real property in which [the Markles] have an interest </u>at any time."  (Agreement at ¶ 14) (emphasis added).  It is "fundamental that a party may not mortgage an interest in property greater than that which it owns."  <u>Ladder Energy Co. v. Intrust Bank, N.A.</u>, 1996 OK CIV APP 126, 931 P.2d 83, 85.  When the Agreement was recorded, Mid-Con's lien attached to the undivided one-half interest in the Home held by the Markles.

16

b.   *The Undivided One-Half Interest Transferred to the Trust*

Mid-Con argues that by recording the Agreement, its lien also attached to the undivided one-half interest in the Home held by the Trust.  Unless the Markles' transfer of an undivided one-half interest in the Home to the Trust was void, Mid-Con's lien could not have attached to that interest for the same reasons that Mid-Con's lien did not attach to the Farm.  See supra pp. 14-15.

The Trust that held the one-half interest in the Home included a spendthrift provision.  Under Oklahoma law, a spendthrift provision in a self-settled trust is not enforceable.  See 60 O.S. § 175.25(H).[7]  Since the Debtor had named himself as the primary beneficiary of the Trust, the Debtor's interest in the Trust was alienable and subject to Mid-Con's efforts to satisfy the obligations of the Debtor.  Id.  Pursuant to 60 O.S. § 175.25(I), in order for a creditor to use trust assets to satisfy the obligations of a trust beneficiary, the creditor must take legal action in a court of competent jurisdiction and name the beneficiary as a defendant in the action.  Further, "[t]he trustee shall not be required to recognize any of the obligations [of the beneficiary] or to withhold any income from the beneficiary until said trustee has been served with a summons or garnishment summons."  Id.  In order for Mid-Con to satisfy the obligations of the Debtor from assets of the Trust, Mid-Con was obligated to follow the statute and serve notice on the trustee of the Trust by summons.  When Mid-Con commenced its foreclosure proceeding against the Home and named the Debtor, Ms. Markle, and the

---

[7]  "Nothing in this act shall authorize a person to create a spendthrift trust or other inalienable interest for his own benefit. The interest of the trustor as a beneficiary of any trust shall be freely alienable and subject to the claims of his creditors." 60 O.S. 175.25(H).

Trust as defendants, it may have given the required notice to the Trust.  When Mid-Con recorded a Notice of Lis Pendens against the Home on December 18, 2007, it put all potential transferees of the Home on notice of the foreclosure action as of that date.

The Trustee contends that regardless of whether Mid-Con's lien attached to the Trust's undivided one-half interest in the Home on December 18, 2007, when Mid-Con recorded its Notice of Lis Pendens against the Home, or on January 17, 2008, when the property was reconveyed to the Debtor from the Trust, the attachment of the lien is avoidable as a preferential transfer.  Pursuant to Section 547(b) of the Bankruptcy Code "a transfer is avoidable if it: (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor is insolvent; (5) is made on or within ninety days before the date the bankruptcy petition was filed; and (6) allows the creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate." Bailey v. Big Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1196 (10th Cir. 2002).  "The burden is on the Trustee to prove his prima facie case, see § 547(g). And, since the Trustee is the movant for summary judgment, the burden is on him to show that he is entitled to

judgment without trial." <u>Kirtley v. Consol. Nutrition, L.C. (In re Freeny</u>), 187 B.R. 711, 715 (Bankr. N.D.Okla., 1995).[8]

It is undisputed that Mid-Con is a creditor seeking payment of an antecedent debt. Pursuant to Section 547(f) of the Bankruptcy Code, the Debtor is presumed to be insolvent during the ninety days prior to the filing of the bankruptcy.  It is undisputed that unsecured creditors will not receive full satisfaction of their claims in the underlying bankruptcy case. Mid-Con's conversion of an unsecured debt into secured debt by attachment of a lien against an interest in the Home would ensure that Mid-Con would receive more than it would have received absent the attachment of the lien.  Thus, five of the six elements required to show the avoidability of the Mid-Con's lien have been established.

However, the Trustee has failed to present a prima facie case for avoidability because he has not provided undisputed evidence to establish that Mid-Con's purported lien attached to an undivided one-half interest in the Home <u>within ninety days of the bankruptcy</u>.  In particular, the Trustee failed to submit evidence to establish that the foreclosure action was commenced by Mid-Con against the Trust within the ninety-day period.  Although the Notice of Lis Pendens was recorded on December 18, 2007, there is no evidence regarding the date the foreclosure action against the Markles' interest in property owned by the Trust was filed, nor evidence of when or if the trustee of the Trust was served.  Taking all inferences in a

---

[8] Section 547(g) provides, "[f]or the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."  11 U.S.C. § 547(g).

light most favorable to Mid-Con, the trustee of the Trust could have been served with a summons or notice of the foreclosure <u>more than ninety days prior to the bankruptcy</u>.[9]   In addition, neither the Trustee nor Mid-Con has provided the Court with argument and authorities concerning the effect of 60 O.S. § 175.25(I) (i.e. does a lien asserted against trust property for obligations of the trustor "attach" upon compliance with the statute, would such a lien only attach when judgment is rendered, or is there ever a true "lien" against the trust property?)  Thus, the Court concludes that certain material facts required to determine the status of Mid-Con's claimed lien on the interest in the Home owned by the Trust, and thus its avoidability, were not established by the Trustee.  Because the Trustee failed to meet his evidentiary burden concerning the avoidability of Mid-Con's claimed lien, summary judgment on the Trustee's §547(b) claim is not appropriate on this record.[10]

---

[9]   The date of service of the summons on the trustee of the Trust is important because pursuant to 60 O.S. § 175.25(I), service of the summons on the trustee of a self-settled revocable trust triggers an obligation on behalf of the trustee to "recognize" obligations of the creditors of the trustor/beneficiary.

[10]  On January 17, 2008, four days before the Debtor filed his Chapter 7 petition, the Trust reconveyed its undivided one-half interest in the Home back to the Debtor.  Pursuant to the Agreement and Oklahoma law regarding liens on after-acquired property, Mid-Con's lien may have attached at that time since a lien attaches "from the time when the party agreeing to give [the lien] acquires an interest in the thing to the extent of such interest."  42 O.S. §8.  <u>See also</u> 16 O.S. § 17.  Mid-Con also asserted that the attachment of the lien would relate back to either the date the Agreement was signed or the date it was recorded but failed to provide any legal authority in support of those assertions.  The Court has not reached these issues since they are not ripe for determination until the status of the earlier foreclosure proceeding is determined.

B.   Mid-Con's Allegations that the Markles' Transfers of the Farm and the Home Were Void

Mid-Con argues that the Markles' pre-petition transfers of the Farm and an undivided one-half interest in the Home were fraudulent and void as to Mid-Con under Oklahoma law and that Mid-Con's lien attached to both properties at the time the Agreement was recorded on August 29, 2006.

First, Mid-Con relies on statements made by the Trustee in the Complaint and in the Trustee's Motion that the post-petition transfer of the Farm to the Trustee was made "in lieu of [Trustee]'s pursuit of a fraudulent transfer claim" to establish that the prior transfer of the Farm was in fact fraudulent.  See Complaint at 4, ¶ 11; Trustee's Motion at 2, ¶ 4.  The characterization of the transfer by the Debtor to the Trustee in the pleadings does not constitute evidence of any fraudulent transfer by the Debtor, nor does it preclude the Trustee from arguing that any prior transfer by the Debtor was not fraudulent. Mid-Con presented no evidence to establish that any transfers were fraudulent or to indicate that there is any inference to be made in its favor on this issue.

Mid-Con's reliance on Wells v. Guaranty State Bank, 1916 OK 394, 156 P. 896, for the proposition that all of the Markles' transfers were void is misplaced.  In Wells, the court found that fraudulent transfers were void based on "Section 1174, R.L. 1910," an Oklahoma statute that predates (and was superceded by) Oklahoma's Uniform Fraudulent Transfer Act (24 O.S. §§ 112-23), which was adopted in 1986.  Pursuant to 24 O.S. § 119, fraudulent transfers are avoidable, not void, and in order to avoid a fraudulent transfer, legal action in

21

an appropriate forum is required.[11]  Mid-Con failed to institute any legal action to avoid the

alleged fraudulent transfers pre-petition, and any right that Mid-Con had to avoid transfers

vested in the Trustee post-petition pursuant to Section 544(b) of the Bankruptcy Code.  The

transfers have never been adjudicated as voidable.  Accordingly, Mid-Con did not, and may

not now, avoid the Markles' transfers of property to the Trust and to Markle Holdings, L.L.C.

Second, Mid-Con argues that the transfer of an undivided one-half interest in the

Home to the Trust was void pursuant to 60 O.S. § 175.25(H) because the Debtor had named

himself as the primary beneficiary of the revocable Trust.  Although Section 175.25(H)

provides that a person is not authorized to create a spendthrift trust or other inalienable

interest for his own benefit and that the interest of the trustor as a beneficiary of any trust is

---

[11] 23 O.S. § 119 provides:
A. In an action for relief against a transfer or obligation pursuant to the
provisions of the Uniform Fraudulent Transfer Act, a creditor, subject to the
limitations of Section 9 of this act, may obtain:
> 1. Avoidance of the transfer or obligation to the extent necessary to
> satisfy the creditor's claim; or
> 2. An attachment or other provisional remedy against the asset
> transferred or other property of the transferee as provided for by law;
> or
> 3. Subject to applicable principles of equity and in accordance with
> applicable rules of civil procedure:
>> a. an injunction against further disposition by the debtor or a
>> transferee, or both, of the asset transferred or of other property,
>> or
> b. appointment of a receiver to take charge of the asset transferred or of
> other property of the transferee, or
> c. any other relief the circumstances may require.
B. If a creditor has obtained a judgment on a claim against the debtor, the
creditor, if the court so orders, may levy execution on the asset transferred or
its proceeds.

subject to the claims of his creditors, this section does not declare that a revocable trust with a spendthrift provision is void.[12]

Third, Mid-Con argues that the transfer to the Trust was void because the Trust is illusory. In order for this Court to find the Trust illusory under Oklahoma law, Mid-Con must prove that the Trust was established solely for Markle's benefit as the trustee/beneficiary. The existence of any other beneficiaries indicates that the Trust is not illusory. See Limb v. Aldridge, 1999 OK CIV APP 31, 978 P.2d 365. In this case, it is undisputed that the Trust named contingent beneficiaries.

Fourth, Mid-Con claims that any transfers between the Markles and any single member L.L.C.'s were illusory. Mid-Con presented no legal basis for this argument, and the record shows that the transfers from the Markles to Markle Holdings, L.L.C. occurred at a time when Markle Holdings, L.L.C. was a legal entity authorized to hold title to real property.[13] The transfer from the Markles to the L.L.C. that was recorded on March 28, 2006, is facially valid. Again, any action by Mid-Con to "pierce the corporate veil" of any

---

[12] The Trust document itself recognizes that the spendthrift provision in the Trust does not apply to the Trustor, i.e., the Debtor. Response, Exh. 4, ¶ 5.6. A trust containing a spendthrift provision that strictly complies with Oklahoma law cannot be void simply because it contains a spendthrift provision.

[13] A limited liability company may "[a]cquire by purchase or any other manner, take, receive, own, hold, improve, and otherwise deal with any interest in real or personal property, wherever located." 18 O.S. §2003(5). See also 16 O.S. §14.1. Oklahoma law also treats the L.L.C. property as distinct from the members property. See 16 O.S. §14.1. ("Specific property owned by a limited liability company is not subject to execution on a claim, judgment or lien against a member or manager of the company.") See also 18 O.S. §2032.

L.L.C. entity and avoid the transfers would have required some pre-petition legal action, which Mid-Con has failed to establish.

        C.      <u>Judgment of the Tulsa County District Court</u>

Mid-Con also claims that the default judgment entered post-petition by a Tulsa County District Court established the validity and priority of its liens on the Home. The Trustee does not dispute the existence of that default judgment, which Mid-Con attached to its Motion for Summary Judgment (Adv. Doc. 19) as Exh. 5, but does dispute its validity. On March 4, 2008, this Court entered an agreed order between the Trustee and ABN Amro Mortgage Group, Inc. modifying the stay on the Home to allow ABN Amro Mortgage Group, Inc. to enforce its liens.  (Main Case Doc. 58).   Significantly, Mid-Con was not a party to the motion requesting that the stay be modified and has never filed a motion to modify the stay in the Debtor's main bankruptcy case.  On April 22, 2008, Mid-Con submitted and received a default judgment from the Tulsa County District Court, purporting to establish the validity and priority of Mid-Con's claimed lien against the estate's interest in the Home. Mid-Con failed to produce any evidence that the Trustee, the real party in interest in the proceeding, was given notice of the motion for default judgment.  No preclusive effect is afforded to a judgment obtained against a party where prosecution violated the stay, because such a judgment is void *ab initio*.  <u>See</u> <u>Ellis v. Consolidated Diesel Electric Corp.</u>, 894 F.2d 371 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect").  For purposes of establishing any issue regarding the lien of Mid-

Con against the Home, the entry of the default judgment against the Debtor in Tulsa County District Court on April 22, 2008, is void.

## VI.   Conclusion

For the reasons stated herein, the Trustee's Motion is granted in part and denied in part.

### A.    The Farm

The Markles transferred all of their interest in the Farm to Markle Holdings, L.L.C. prior to August 29, 2006, the date Mid-Con attempted to record and perfect a lien on the Farm.  Mid-Con failed to show that the transfer from the Markles to Markle Holdings, L.L.C. was void.  Since the Markles had no interest in the Farm when Mid-Con supplemented and recorded the Agreement on August 29, 2006, no lien in favor of Mid-Con ever attached to the Farm.  The Trustee's Motion requesting summary judgment declaring that Mid-Con's lien never attached to the Farm is granted.

### B.    The Home

With regard to the undivided one-half interest in the Home that the Markles retained, the undisputed facts support a finding that Mid-Con's lien attached to that interest when it recorded the Agreement on August 29, 2006.  Because that date is more than ninety days prior to the Debtor's bankruptcy, Mid-Con's lien is not avoidable by the Trustee under Section 547(b) of the Bankruptcy Code.  The Trustee's request for summary judgment declaring that Mid-Con's lien on this undivided one-half interest in the Home either did not attach or in the alternative was avoidable is denied.

25

With regard to the undivided one-half interest in the Home that the Markles' transferred to the Trust and which the Trust reconveyed to the Debtor, the record lacks sufficient facts to allow the Court to determine whether the commencement of Mid-Con's state court foreclosure action against the Trust's interest in the Home established a lien in favor of Mid-Con under 60 O.S. § 175.25(I), and if it did, whether such a lien is avoidable as a preference pursuant to Section 547(b) of the Bankruptcy Code.  The Trustee's request for summary judgment declaring the parties rights on the Trust's prior interest in the Home is denied.

**SO ORDERED** this 14th day of October, 2008.


DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

7067

26